Michael T. Pines (SBN 77771)
Pines & Associates
701 Palomar Airport Rd., Suite #300
Carlsbad, CA 92011
Office: 760-453-0131
Facsimile:  760-301-0093
michaeltpines@gmail.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

JAMES M. WASHGINTON, GISELLE W. WASHINGTON

Plaintiffs,

vs.

RONALD    RICHARDS,    SODA PARTNERS    LLC,    QUALITY    LOAN SERVICE  CORP., SELECT  PORTFLOIO LOAN  SERVICING INC., HSBC  BANK USA, NA., REMINGTON  MOVING  AND STORAGE,

Defendants.

Case No.:  **'11 CV 0749 DMS JMA**

**COMPLAINT**

**CLASS ACTION**

**JURY DEMAND**

Plaintiffs suing on behalf of themselves and all others similarly situated, complain as follows.

## PRELIMINARY STATEMENT

1.    This is a class action brought under the Fair Debt Collection Practices Act, 15 U.S.C. §1692, et seq. ( "FDCPA"), which prohibits debt collectors from engaging in abusive, deceptive, and unfair practices and seeks declaratory and

injunctive relief for the individual Plaintiffs and the Class they represent, statutory damages, actual damages, punitive damages and attorneys fees.

## **INTRODUCTION**

2.     Plaintiff is now, and at all times relevant to this complaint was owner of real property commonly known as 301 S. Irving Blvd., Los Angeles, Ca. 90020 ("Subject Property").

3.      At its core, this case is about predatory lending practices, and the biggest fraud ever perpetrated in the U.S. – securitization. Specifically, this case is brought against the above named Defendants who were involved in the fraud by aiding and abetting in the subsequent fraudulent, deceptive and abusive eviction of Plaintiff home owners.

4.     Plaintiff's loan was securitized ("the Subject Loan".) As is typical when a loan is securitized, the funds Plaintiffs borrowed did not come from any source that Plaintiffs could readily identify.  Instead, the money came from "Investors," the identity of whom was concealed by those involved in originating the loan ("Originators"). Notably, Investors all over the United States who actually loaned Plaintiffs money in the first place have filed their own legal actions based at least in part on the very same allegations of predatory lending Plaintiffs were subjected to. Some examples are: *Boilermaker National Annuity Trust Fund ("Boilermaker National") v. WAMU Mortgage Pass Through Certificates, WMA.*, United States District Court, Western District of Washington at Seattle, Case # C090037; Even quasi-federal agencies that invested are filing actions. See, e.g., Federal *Home Loan Bank of San Francisco v. Credit Suisse*, CGC-10-497840, San Francisco Superior Court (collectively all of the above investor actions are the "Investor Cases"). The Federal Home Loan Bank of New York, reputed to be the largest and most

powerful banking institution in the world has publicly it's intention to file similar suit against Bank of America.

5.    Even before the loans were made, the "Securitizers" had planned and arranged to securitize the loans. In the course of securitizing the loans, Securitizers had a practice of taking more money from the Investors than was loaned to the homeowners, and they concealed this practice from both the homeowners (including Plaintiffs and those similarly situated) and the Investors.  In addition, there were usually "credit enhancements" which could take several forms including such things as "excess spreads", over collateralization, reserve accounts, surety bonds, wrapped securities, letters of credit, and cash collateral accounts. (See, http://en.wikipedia.org/wiki/Credit_enhancement for a more detailed description).  On information and belief, Plaintiffs allege that the well-known problems with American International Group (AIG) relate to credit enhancements. Both the Plaintiffs and the Investors have claims to the credit enhancement funds as well as undisclosed fees taken by the Originators and Securitizers and possible credits and offsets for other items under the Real Estate Settlement Procedures Act and other law.

6.    As to Plaintiffs, such funds should be credited against their loans. But it is even worse.  Plaintiffs allege that once a proper accounting is done and proper credits applied, it will be shown that Plaintiffs over-paid. Plaintiffs will owe nothing on their loans making the unlawful detainer action used to evict them simply a part of the ongoing fraud. The Defendants had actual knowledge of this, yet, Defendants decided to aid and abet in the fraud.

**SECURITIZATION OF MORTGAGE LOANS INCLUDING PLAINTIFFS**

7.    Securitization is intentionally complex and the details and even some of the mathematical calculations involved cannot be succinctly set forth in a complaint.

8.    As set forth in the Investor Cases, the securities that the Securitizers sold are so-called asset-backed securities, or "ABS," created in a process known as securitization. More specifically, they involved a complex financial instrument product known generically in the securities industry as collateralized debt obligations ("CDOs"). "Synthetic" CDOs are even more complex instruments that are "derivatives" based only indirectly on the CDOs (i.e., Credit Default Swaps).

9.    Securitization begins with the sale of bonds to Investors (usually they are sold "forward," meaning they are sold to the investors before the Investors' funds are given to mortgage borrowers such as the Plaintiffs.) Only some of the funds were then used to fund loans such as Plaintiffs home owners. Investors were led to believe all of their funds except for reasonable fees were forwarded, but this was false.

10.   The entities involved in making the loans are known as the Originators. The process by which the Originators decide whether or not to make particular loans is known as the underwriting of loans. During the loan underwriting process, representations were made to the Investors that the originators would apply various criteria to try to ensure that the loan will be repaid. However, they did not do so and instead, the way the securitization scheme was structured, it was actually in the best interests of the "Securitizers" (including Originators) for the loans to fail.  They were clearly not acting with the interests of Plaintiffs or the Investors in mind.

11.   Until the loans are securitized, the borrowers on the loans sometimes make their loan payments to an Originator, but this may never occur or

only be for a very short time. Collectively, the payments on the loans are known as the cash flow from the loans.

12. A large number of loans, often of a similar type, were supposed to be grouped into a collateral pool. The Originator of those loans claims it sells them (and, with them, the right to receive the cash flow) to a special purpose vehicle called a trust by the Securitizers. The trust is supposed to pay the Originator cash for the loans. As mentioned, the trust raises the cash to pay for the loans by selling bonds, in the form of certificates, to Investors. Each certificate purportedly entitles its holder to an agreed part of the cash flow from the loans in the collateral pool. However, the loans and documents were in fact never transferred timely into the pools.

13. There were tranches of investment bonds sold.  Typically, "Tranche A" is a veneer of conventional mortgages where the borrowers appear creditworthy.  Other tranches had much less credit worthy borrowers. Using the creditworthy borrowers, the Securitizers obtained ratings on the bonds that were inaccurate at best. Securitizers conspired with the rating agencies to mislead investors. Thus, schematically, these are some of the steps in a securitization in no specific order:

a.   Investments are created for Investors usually in the form of Bonds.

b.   Credit Enhancements are obtained.

c.   Rating agencies are provided misleading information and paid to rate the Bonds as "safe".

d.   Investors pay money to the trust.

e.   The trust issues certificates to the Investors.

f.   The trust pays money to the parties up the chain toward the borrower/property owner through the Originators.

g.   Only part of the funds are used to fund mortgage loans such as the one made to plaintiffs.

h.      The rest of the money is kept by the Originators and Securitizers in the scheme.  In other words, by way of example, the Investors might think they are funding a loan for $1 million, however, only $500,000 is actually loaned to borrowers such as the plaintiffs, and the Securitizers keep the   rest through a complex series of transactions.

i.      The Originator and Securitizers plan in advance for the loans to default.

j.  Loans made to persons like Plaintiffs are purportedly placed into one or more pools.

k.      The Originator was supposed to assign to the trust the loans and in particular the promissory notes, which were to be placed into a collateral pool, including the right to receive the cash, but a proper assignment/transfer was never done.

l.      The trust is supposed to collect cash flow from payments on the loans in the collateral pool; however it has no legal right to do so even under the lengthy, complex documents used in securitization.

m.      When the mortgage loans go into default, the Securitizers demand that payment be made to the Investors by the "credit enhancements."

n.      In "Credit Default Swaps" the Securitizers also placed "bets" that the loans would not pay off (as was planned) in order to cover the difference between what was loaned to borrowers such as Plaintiff and what was funded by the Investors and make another hidden profit for the Securitizers.  According to some published reports, these unregistered securities were frequently more than 30 times the principal on the mortgage loans (such as Plaintiffs').  Thus, if the borrowers such as Plaintiffs did not perform on the loans, the Securitizers would make more money than if they did.

o.      After default, even though the mortgage loan is technically paid in full if a proper accounting were done, and legally the Securitizers have no right to collect, the Securitizers, usually through "servicers", pretend the loan is still owed by the

borrowers. They pretend and represent to persons such as Plaintiffs money is owed on the loans to the original named "beneficiary" on the deed of trust, and try to foreclose on the mortgage and steal the mortgaged real property from borrowers such as the Plaintiffs. The Mortgage Electronic Registration System ("MERS") was often used as a part of the scheme named as the "nominal beneficiary" to pretend it had the right to transfer the mortgages and/or collect money from the borrowers such as Plaintiffs.

p.      Securitizers hire law firms such as Defendants who know or should know collection of loans such as the Subject Loan is improper and routinely conceal information concerning such to the courts.

q.      Recently, the U.S. Supreme Court has found that these law firms are liable in class actions under the Fair Debt Collection Practices Act. (See Jerman v. *Carlisle, McNellie, Rini, Kramer & Ulrich LP, et al.*, 130 S. Ct. 1605; decided April 21, 2010).

14.      At the risk of being redundant, but also more specific and adding that the taxpayers are paying for this, the order of things is usually as follows:

•      The first transactions that occurred were the sale of securities to unsuspecting investors.

•      The second transaction that occurred was that the investor money was put into an account at an investment banking firm.

•      The third transaction was that the investment banker divided the money between fees for itself and then distributing the funds to aggregators or a Depository Institution.

•      The fourth transaction was the closing with the borrower. The loan was funded with the money from the investor after deducting large undisclosed fees and also because of the disparity between the interest payable to the investor and the interest payable by the borrower, a yield spread was created, adding huge sums

to what the investment banker took without disclosure to the investors or the borrowers.

•    The fifth was supposed to be the assignment and acceptance of the loan generally into between 1 and 3 asset pools, each bearing distinctive language describing the pool such that they appeared to be different assets than already presumed to exist in the first pool.  However, this never happened timely under the Pooling and Service Agreement.

•    The sixth was the receipt of insurance or counter-party payments on behalf of the pool pursuant to the documents creating the securitization structure.

•    The seventh was the re-securitization of the pooled assets between one and three times.

•    The eighth was the federal bailout payments and receipts allocable to the balances owed on the loans that were claimed to be part of the pool.

•    The ninth are the foreclosures by parties who never provided any money which is often the original named beneficiary on the trust deed.

•    In the alternative fraudulent and forged assignments were made, so it could be alleged the Richards represent investors ("robo-signing") occurred which is currently the subject of criminal investigations.

•    Lastly, attorneys are hired to evict the home owners such as plaintiffs.

•    After eviction, the house is sold to a new home owner who is also defrauded since they are told none of this, and no one knows at this point where the proceeds from the sales go.

•    It is unlikely it goes back to the government which has at least indirectly funded all this through "bail outs".

15.    Securitization involves many documents. In broad brush, it involves the closing documents between loan Originators, Servicers, Special Purpose Vehicles, Aggregators, etc. including the Pooling and Service Agreements, the Assignment and Assumption Agreements, the Master

Service Agreements  [if separate]. None of these include the borrower as party or references any specific debtor or borrower because the debtor is unknown when the securitization structure is created.

16. Each securitization has a Sponsor, a prime mover of the securitization. Sometimes the sponsor is the Originator or an affiliate. In Originator-sponsored securitizations, the collateral pool usually contains loans made by the Investors. Sometimes, the Sponsor may be an investment bank.

17. The two important documents in the mortgage loan made to the home owner/borrower are the promissory note and the mortgage (usually a deed of trust as in Plaintiffs' loans in California).

18. The Sponsor is supposed to arrange for title to the mortgage loans to be transferred to an entity known as the Depositor, which then was supposed to transfer title to the loans to the trust, including the promissory notes.

19. As mentioned, the assignment of the notes and mortgages never properly occurred and this is the subject of countless lawsuits by the borrowers such as Plaintiffs.

20. The obligor of the certificates in a securitization is supposed to be the trust that purchases the loans in the collateral pool. However, this cannot be true because title to the mortgage loans was never perfected. The trust is a mere conduit that has no power to do anything, and has no real trustee.

21. The Pooling and Service Agreements provide certain time deadlines by which transfers were to be made, and these were not met.

22. When a trust has no assets it cannot satisfy the liabilities of an issuer of securities (the certificates). According to the Investor Cases, the law therefore treats the Depositor as the issuer of an asset-backed certificate.

23. According to the Investor Cases, securities dealers, represented that they would underwrite the sale of the certificates. Most important, securities

underwriters provided to potential investors the information that they need to decide whether to purchase certificates.

24. Because the cash flow from the loans in the collateral pool of a securitization is purportedly the source of funds to pay the holders of the certificates issued by the trust, the credit quality of those certificates, if this were true, would be dependent upon the credit quality of the loans in the collateral pool. According to the Investor Cases, the most important information about the credit quality of those loans is contained in the files that the Originator develops while making the loans, the so-called loan files. For residential mortgage loans, each loan file normally contains the information in such important documents as the borrower's application for the loan, credit reports on the borrower, and an appraisal of the property that will secure the loan.

25. Collateral pools usually include thousands of loans. Instead of potential investors individually reviewing thousands of loan files, the securities firms that would underwrite the sale of the certificates in a securitization were supposedly responsible for gathering, verifying, and presenting to potential investors the information about the credit quality of the loans that will be deposited into the trust.

26. As was alleged in the Investor Cases, the Securitizers sold to the Investors certificates in securitizations the information that was presented to Investors contained many false statements that were material to the mortgage/loan transactions.

## JURISDICTION AND VENUE

27. This Court has jurisdiction under the Federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692k, and over the state claims pursuant to supplemental jurisdiction, 28 U.S.C. § 1367.

28. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 (c) because some of the defendants do business in San Diego County and maintain offices here. Plaintiffs' action for declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

## PARTIES

29. Plaintiff JAMES M. WASHINGTON is a natural person who resides in the County of Los Angeles, State of California, and is a "consumer" as that term is defined by U.S.C. § 1692a(3) as are all plaintiffs.

30. Plaintiff GISELLE W. WASHINGTON is a natural person who resides in the County of Los Angeles, State of California

31. Defendant Quality Loan Service ("Quality") is a debt collector doing business and with offices in San Diego, California.

32. Defendant HSBC BANK USA, NA, ("HSBC") is a national bank doing business and with offices in San Diego, California.

33. Defendant RONALD RICHARDS ("Richards"), is an attorney whose office is located in Los Angeles, California.

34. Defendant SELECT PORTFOLIO SERVICING INC.,("Select") is a Utah Corporation.

35. SODA PARTNERS, LLC, ("Soda") is a California, LLC.

36. Plaintiffs are informed and believe, and thereupon allege, that at all pertinent times each of the Defendants was the agent of each of the remaining Defendants, and /or acted with their consent, ratification and authorization, and/ or aided and abetted one another in doing the acts alleged herein, each of the Defendants acted in such capacity with respect to the remaining Defendants.

37. Plaintiffs are informed and believe that REMINGTON MOVING AND STORAGE is a California LLC, doing business in San Diego, California.

## CLASS ALLEGATIONS

38.   This Class Action is being filed by Plaintiffs, pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and others similarly situated as against the Richards, Quality, Select, and other Defendants considered "debt collectors" within the meaning of the Fair Debt Collection Practices Act ("FDCPA"), and the Rosenthal Act;  primarily for equitable relief to stop their unlawful conduct. Plaintiffs are currently unsure which other potential defendants are debt collectors within the meaning of the FDCPA and Rosenthal Act because this is concealed by Defendants, and Plaintiffs will amend this complaint when such is ascertained.

39.   Plaintiffs bring this action on behalf of themselves and all other persons similarly situated, as members of a proposed Plaintiff Class.

40.   The class that Plaintiffs seek to represent are identified as:

a)   All persons that have been named defendants in unlawful detainer actions by Richards, within 1 year preceding the filing of this complaint where the plaintiff brought the action after a foreclosure and trustee sale.

41.   This action has been brought and may properly be maintained as a class action under Rule 23 of the Federal Rules of Civil procedure.

42.   This Court may maintain these claims as a class action pursuant to Fed. R. Civ. P. 23(b) (1), 23(b) (2), 23(b) (3), and/or 23(c) (4)(A), however, it is Plaintiffs' current intent to seek certification under F.R.C.P 23(b)(2) seeking primarily equitable relief, statutory damages, and attorneys fees.

43.   Existence of an Identifiable Class - The proposed Class definition is sufficiently definite so that it is administratively feasible for the Court to determine whether a particular individual is a member. Members of the Class may be identified from records maintained by Defendants, various court records, and documents recorded by the County Recorders.

44.   Numerosity of the Class - Fed. R. Civ. P. 23(a) (1): The members of all Classes are so numerous that joinder of all members is impracticable.

The precise number of Class members and their addresses are unknown to Plaintiffs, but can be obtained from Defendants and from various court records. Class members can be notified of the pendency of this action based on those records, or by any means used by the defendants to notify them of the underlying unlawful detainer suits. The disposition of the claims of the Class members in a single action will provide substantial benefits to all parties and the Court.

45. Existence of Common Questions of fact and Law - Fed. R. Civ. P. 23(a)(2) Plaintiffs, as Class Representatives, allege that the questions of law and fact relating to their claims are common to the claims of the class and the claims predominate over any questions affecting solely individual members, in satisfaction of rule 23(a)(2). These common legal and factual questions include:

• Whether defendant debt collectors, by filing unlawful detainer actions, and evicting or seeking to evict plaintiffs without having an assignment and/or possession of the promissory note, without a proper assignment of the trust deed mortgage, creating and using improper documents created by them to foreclose, and when they knew or should have known of the fraudulent scheme involved in securitization have violated:

- the Federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq., by engaging in unfair and unlawful debt collection practices.

- the California Civil Code § 1788 - California Rosenthal Fair Debt Collection Practices Act; and/or

- California Civil Code § 2924h; and/or

- California Business and Professions Code § 17200.

• Whether Plaintiffs and Class members have been injured by Defendants' conduct;

• Whether Plaintiffs and Class members are entitled to compensatory damages, and the amount of such damages; and

• Whether Plaintiffs and Class members are entitled to statutory damages and the amount of such damages.

• Whether Plaintiffs and Class members are entitled to legal costs and fees.

• Whether Plaintiffs and Class members are entitled to equitable relief.

46.   Typicality - Fed. R. Civ. P. 23(a) (3): Plaintiffs claims are typical of the claims of the Class because defendants initiated suit against them with actual and constructive notice that the unlawful detainer action and attempted sale of plaintiffs' home was a fraud and attempt to defraud a new innocent home owner in a subsequent sale, and when they knew about the fraudulent scheme of securitization. Furthermore, all members of the Class are similarly affected by defendants' wrongful conduct.

47.   Adequacy - Fed. R. Civ. P. 23(a) (3) (4): Plaintiffs are an adequate representative of the Class because Plaintiffs' interests overlap and are not in conflict with the interests of the Class. Plaintiffs have retained counsel competent in complex litigation, and Plaintiff intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

48.   The class may be certified pursuant to Fed. R. Civ. P. 23(b)(1). Class certification is appropriate pursuant to Rule 23(b)(1) because the prosecution of separate actions by individual members of the classes would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants and/or because adjudications respecting individual members of the classes would be a practical matter, be disparities of the interests of the other members or would risk substantially impairing or impending their ability to prosecute their interests.

49.  The class may be certified pursuant to Fed. R. Civ. P. 23(b)(2). Class certification is appropriate pursuant to Rule 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to all members of the class, thereby making final injunctive relief or declaratory relief as a whole appropriate. Plaintiffs and members of the Class have suffered, and will continue to suffer, harm and damages as a result of Defendants' unlawful and wrongful conduct.  Plaintiffs currently intend to seek certification pursuant to Rule 23(b)(2).

50.  The class may be certified pursuant to Fed. R. Civ. P. 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of the controversy under Rule 23(b)(3). Absent a class action, most members of the Class likely would find the cost of litigating their claims to be prohibitive, and will have no effective remedy at law. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

## FACTUAL ALLEGATIONS

51.  The core of this action arises out of a loan made to Plaintiffs that was securitized, and which was "predatory" by legal definition.  A Deed of Trust was executed relating to the Subject Property.  This Deed identified:

   a.  "Borrower" as the plaintiffs;

   b.  "Lender" as Quick Loan Funding, Inc.;

   c.  "Trustee" as United Title Company;

The Deed of Trust secured a Note.

During the closing of the loan, Originators acquired the loan, evidenced by a promissory note and secured by a trust deed on the home.  The terms of the loan was memorialized primarily in a promissory note.

The promissory note was never properly assigned to anyone.

52. The funds for the loan were provided by Investors and fraud was committed in the securitization process as alleged above.

53. There was subsequent foreclosure related activity on the Subject Loan The deed of trust identified various parties as the "lenders." This was false and misleading because, inter alia, the funds came from Investors. In agreeing to sign the loan documents and to encumber the Subject Property with a deed of trust, Plaintiffs relied upon promises made by the Originators.

54. The Originators concealed from Plaintiffs their intent to securitize the loans and misrepresented the identity of the party providing the funds for his loan.

55. In many cases such as Plaintiff's, assignments of a deed of trust were recorded which purportedly assigned the deeds of trust from the original named "lender" to third parties. These assignments were invalid, and created fraudulently and/or forged.

56. In all cases, the amounts claimed to be in default are incorrect and/or includes charges not permitted under the loan documents.

57. Securitizers have made false statements concerning the amounts owing at various points in time to Plaintiffs. In fact, defendants have never shown the proper amounts claimed owing on the loans and Plaintiffs are informed and believe Defendants cannot do so, due at least in part to the massively complex mathematical calculations that would be required.

58.     In recording Notices of Defaults ("NODs"), Securitizers unlawfully initiated non-judicial foreclosure proceedings against Plaintiffs by improperly claiming amounts not owing.

59.     The NODs state, inter alia: "NOTE(S) FOR THE ORIGINAL [Trust Deed] …are presently held by the undersigned…." This was false; the foreclosing parties did not hold the note connected to the Plaintiffs' trust deed.

60.     Securitizers, in committing the acts alleged in this Complaint, are engaging in a pattern and practice of unlawful activity. In pursuing the non-judicial foreclosures, Securitizers represented that they had the right to payment under the note in connection with the loan, payment of which was secured by a deeds of trust.  Whereas, in fact, the Securitizers were not in possession of the note and they were neither holders of the note or assignees of the note or trust deed entitled to payment and therefore they were proceeding to foreclose without rights under the law.

61.     The final stage of a foreclosure proceeding is a sale of the Subject Property through a public auction at which the current beneficial owner of the right to foreclose is the only lawful party who can provide instructions to the trustee on the amount of money to accept at the sale or to "credit bid" up to the amount owed on the loan.  In fact, none of the Securitizers, or any of their authorized agents, who have played a part in the non-judicial foreclosure proceedings were entitled to receive payment from the loan proceeds, or title to or possession of the Subject Properties, or to give instructions to any trustee on the deed of trust.  The making of the assertion in the foreclosure proceedings that the beneficiary was entitled to foreclose and the NODs and trustee sale based on amounts not properly owing is an act of fraud or deceit within the meaning of Cal. Civ. Code §2924h.

62. The intent to securitize, the fraudulent acts and omissions involved in the origination, transfers of the Subject Loans, and securitization of the Subject Loans, were concealed from Plaintiffs.

63. Securitizers and Purchasers, by and through their attorneys, the Defendant Richards, filed an Unlawful Detainer eviction action against Plaintiffs claiming that their clients were the rightful owner of the subject properties and were entitled to possession. At the time these complaints were filed, Defendant Richards knew of the material defects of said foreclosure sales. In fact, they were notified and had personal knowledge of such. However, instead of ceasing their unlawful activities, the Richards often personally verified the complaints, and in some cases other documents claiming to have personal knowledge of the complaints for eviction and asserted they knew their contents to be true. The real facts are that Defendant Richards was and is fully aware that Plaintiffs' loans were securitized, and that his clients had no legal right to foreclose, and intentionally concealed this from the courts in the eviction actions in order to steal Plaintiffs' property.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE FDCPA, 15 U.S.C. § 1692

**(Against Defendants Richards, Quality, Select Acting As Debt Collectors And Others to Be Alleged By Amendment)**

64. Plaintiff repeats and re-alleges each and every allegation contained above.

65. Defendants have concealed the roles of the parties and Plaintiffs are unsure who, other than named defendants, are "debt collectors" of the loan.  Plaintiffs will amend this complaint when the appropriate parties who were debt collectors are discovered.

66.     Federal law prohibits the use of "any false, deceptive or misleading representation or means in connection with the collection of any debt..."

67.     In prosecuting the unlawful detainers the debt collector Defendants:

a.     made false, deceptive and misleading representation concerning their standing to sue the plaintiffs and the interest in the debt;

b.     falsely represented the status of the debt, in particular, that it was due and owing by defendants to plaintiffs at the time an eviction suit was filed;

c.     falsely represented or implied that the debt was owing to defendants as an innocent purchaser for value, when in fact, a valid and legal assignment had not been accomplished;

d.     threatened to take action, namely engaging in collection activities and collection and foreclosure proceedings as trustees that cannot legally be taken by them, and

e.     obtained access to state courts to evict home owners, under false pretenses, namely, that Defendants were duly authorized to engage in such activities when in fact they were not, and

f.     in the case of Purchasers, Richards, knew or should have known they did not acquire proper title and proceeded with eviction proceedings against Plaintiff home owners anyway.

68.     Defendants did not, and cannot, obtain and/or file an assignment of the notes or mortgages of the named Plaintiffs or putative class members at this time as it would violate the "Pooling and Service Agreements" used in securitization.

69.     Securitizers discovered that that the assignments and proper documents to collect the Subject Loans could not actually be located. To solve the problem of missing assignments, and other documents, new assignments were made and recorded. Most of these Assignments including those allegedly affecting the notes and mortgage for Plaintiffs residences

contained false statements. The Assignments were prepared by specially selected law firms and companies that specialized in providing "mortgage default services" to banks and mortgage companies and which is the subject of a criminal investigation.

70. In all of these cases, the Assignments were prepared to conceal that no valid or proper assignments of the promissory notes or trust deeds ever occurred.

71. The foregoing acts and omissions of Defendants constitute violations of the FDCPA, including, but not limited to, 1692c, 1692d, 1692e, 1692f, 1692g, and 1692i.

72. Plaintiffs and Class members are entitled to recover equitable relief, statutory damages, actual damages, reasonable attorney's fees, and costs.

## SECOND CAUSE OF ACTION

**VIOLATION OF CALIFORNIA ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT ("Rosenthal Act")**

**California Civil Code § 1788, et seq.**

**(Against Defendants Richards, Quality, Select Acting As Debt Collectors And Others to Be Alleged By Amendment)**

73. Plaintiff repeats and re-alleges each and every allegation contained above.

74. "Debt collectors" named in this cause of action are subject to the Rosenthal Act.

75. Defendants have concealed the roles of the parties and Plaintiffs are unsure who the other "debt collectors" of the loan are, and Plaintiffs will amend this complaint when the appropriate parties who were debt collectors are discovered.

76. Defendants' actions constitute a violation of California Civil Code

§ 1788, et seq., also known as the Rosenthal Act, in that they threatened to take actions prohibited by law, including, without limitation: falsely stating the amount of a debt; increasing the amount of a debt by including amounts not permitted by law or contract; improperly foreclosing upon the Subject Residence; and using unfair and unconscionable means in an attempt to collect a debt.

## THIRD CAUSE OF ACTION

## VIOLATIONS OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200

### (Against All Defendants)

77.    Plaintiff repeats and re-alleges each and every allegation contained above.

78.    Defendants committed unlawful, unfair and/or fraudulent business practices, as defined by California Business & Professions Code § 17200, by engaging in unlawful, unfair and fraudulent business practices as alleged herein.

79.    As a result of Defendants' misconduct, Plaintiffs have suffered various damages and injuries according to proof at trial.

80.    Plaintiffs seek injunctive relief enjoining Defendants from engaging in unfair business practices described herein.

81.    Plaintiffs further seek restitution, disgorgement of sums wrongfully obtained, costs of suit, reasonable attorneys' fees, and such other and further relief as the Court may deem just and proper.

## FOURTH  CAUSE OF ACTION

## TO SET ASIDE TRUSTEE SALE AS TO LEAD PLAINTIFFS ONLY

### (Against Defendant HSBC)

82.    Plaintiff repeats and re-alleges each and every allegation contained above.

83. Defendant Deutche claims to be the owner, by virtue of a trustee's deed. defendant is in some manner liable to plaintiff, or claims some right, title, or interest in the Subject Property, or both.

84. Plaintiff alleges on information and belief that defendant published and posted, or caused to be published and posted, at various times and in various places certain notices of their intent to sell the trust property at public auction.

85. The sale was improperly held and the trustee's deed was wrongfully executed, delivered, and recorded in that it was part of the securitization scheme and fraud as set forth above in violation of the terms and conditions of the promissory note and deed of trust and in violation of the duties and obligations of defendant beneficiary and defendant trustee to plaintiff, and based on forged and fraudulent documents, all to plaintiff's loss and damage in that plaintiffs have been wrongfully deprived of the beneficial use and enjoyment of the real property and has been deprived of legal title by forfeiture.

86. Plaintiffs have no obligation to tender to defendant because, inter alia, defendants named herein had no legal right to title or authority to foreclose and pursue sale of the subject property due to multiple illegal and invalid assignments, as well as securitization that separated the Deed from the underlying note as part of a fraudulent scheme, and, furthermore, the loan was not in default.  In addition, the in the origination of the Subject Loan, the Truth In Lending Act was violated which specifically provides tender is NOT required.

87. However, Plaintiff is ready, willing, and able to tender sums, if any, that the Court finds due and owing on rendering the accounting requested in the Accounting  Cause of Action of this complaint (infra).

**FIFTH CAUSE OF ACTION**

**To Cancel Trustee's Deed**

**(As Against Defendant HSBC For Lead Plaintiff Only)**

88.     Plaintiff re-alleges and incorporates by reference all the allegations set forth above.

89.     Defendant HSBC claims an estate or interest in the subject real adverse to that of plaintiff, but defendant's claims are without any lawful rights.

90.     The claims of defendant HSBC are based on the trustee's deed purporting to convey the Subject Property to defendant HSBC.

91.     Although the trustee's deed appears valid on its face, it is invalid, void, and of no force or effect regarding plaintiffs' interests in the subject real property and HSBC had at all times mentioned herein and has actual notice of such.

92.     The estate in the described real property claimed by defendant HSBC based on the trustee's deed, is a cloud on plaintiffs' title in and to the subject real property, tends to depreciate its market value, restricts plaintiffs' full use and enjoyment of the real property, and hinders plaintiffs' right to unrestricted alienation of it. If the trustee's deed is not delivered and canceled, there is a reasonable fear that plaintiff will suffer serious injury.

**SIXTH CAUSE OF ACTION**

**TO QUIET TITLE**

**(As Against HSBC And All Defendants Claiming An Interest In The Subject Property)**

93.     Plaintiff re-alleges and incorporates by reference all the allegations set forth above.

94.     Plaintiff names as defendants in this action all persons unknown claiming (a) any legal or equitable right, title, estate, lien, or interest in the Subject Property described in the complaint adverse to plaintiff's title, or (b) any

cloud on plaintiffs' title to the property. The claims of each unknown defendant are without any right, and these defendants have no right, title, estate, lien, or interest in the subject property.

95.  Plaintiff desires and is entitled to a judicial declaration quieting title in Plaintiff.

**SEVENTH CAUSE OF ACTION**

**ACCOUNTING**

**(As Against All Defendants)**

96.  Plaintiffs re-allege and incorporate by reference all the allegations set forth above.

97.  Defendants alleged certain monies due from plaintiffs, however plaintiffs allege that said monies are not due or that the amount alleged by defendant(s) is incorrect.

98.  Plaintiffs believe they overpaid on the subject loan and no money is owing to any Defendant.

99.  In the event any of the parties claims any amount owing it is unknown to plaintiffs and cannot be determined without an accounting.

**EIGTH CAUSE OF ACTION**

**ABUSE OF PROCESS**

**(Against Defendant Richards)**

100.  Plaintiffs re-allege and incorporate by reference all the allegations set forth above.

101.  Defendants have used the inherent power of the courts to further their ulterior motives.

102.   Defendants have known, or should have known, that the foreclosure on the Subject Property was invalid and illegal, yet defendants pursued possession of the Subject Property via the power of the courts by filing an improper unlawful detainer action.

103.   Defendants willfully furthered their wrongs by attempting to enforce an unlawful Writ of Possession obtained from said wrongful unlawful detainer.

104.   Defendants' sole ulterior motive was to gain possession of the Subject Property by any means necessary including the improper use of the courts, an abuse of process.

105.   Defendants performed the acts alleged herein willfully and with full knowledge of their illegality.

106.   Because of Defendant's abuse of power, plaintiffs have suffered - and continue to suffer - extreme emotional distress as well as economic damages.

107.   Plaintiffs therefore seek all proper remedies with respect to the Defendants' misuse of judicial power, including damages relating to the Plaintiffs' obligation to hire counsel, Plaintiffs' eviction from their home and related economic damages, and damages for emotional distress related thereto.

## NINTH CAUSE OF ACTION
### TRESSPASS
### (Against Richards and Remington)

108.   Plaintiffs re-allege and incorporate by reference all the allegations set forth above.

109.   Defendants broke into Plaintiffs' home with no lawful right to do so.

110.   Plaintiffs suffered actual and general damages.

111.   Plaintiffs are entitled to punitive damages against said defendants.

## TENTH CAUSE OF ACTION
### CONVERSION
### (As Against Richards and Remington)

112. Plaintiffs re-allege and incorporate by reference all the allegations set forth above.

113. Defendants looted Plaintiffs' house, and stole all of the personal property belonging to Plaintiffs including the family pets.

114. Plaintiffs suffered actual and general damages.

115. Plaintiffs are entitled to punitive damages against said defendants.

WHEREFORE, plaintiff demands judgment as follows:

1. That the Court issue (a) a declaration that the sale of the Subject Property is null and void and of no force or effect, and (b) an order setting aside the trustee sale of the real property.

2. That the Court (a) issue an order that defendant HSBC deliver the trustee's deed to the Court, and (b) cancel the trustee's deed.

3. That the Court order judgment quieting title in lead plaintiff as owner of the subject real property, declaring that defendant HSBC has no right, title, estate, lien, or interest in the Subject Property adverse to plaintiffs.

4. That the Court render between plaintiffs, and all an accounting determining the amount, if any, actually owed to defendants by plaintiffs, or by defendants to plaintiffs.

5. That the Court award general damages.

7.  As against Defendants and for the lead plaintiff an amounts seh would have received as an individual in a FDCPA case;

6.  That plaintiffs recover all attorney fees and costs in this action, and that the Court award any other appropriate relief;

7.  Declaratory judgment that Law Firms conduct violated the FDCPA, the Rosenthal Act and that such defendants violated B&P Code 17200, and an injunction prohibiting such acts in the future;

8.  An award of compensatory damages to each injured class member in an amount deemed appropriate by the trier of facts and/or appropriate equitable relief;

9.  An award of pre-judgment and post-judgment interest;

10.  Enjoin Defendants, their successors in office, agents, employees, and all other persons in active concert and participation with them from continuing their practice of pursuing improper eviction actions;

11.  Any other further legal and/or equitable relief to which lead Plaintiffs and Class members might be entitled at law or which the Court deems proper, including, according to proof, exemplary or punitive damages as may be necessary and appropriate to punish and deter any reprehensible or intentional misconduct.

Dated: April 11, 2010                         PINES AND ASSOCIATES

                                              /s/

                                              By:   Michael T. Pines
                                              Attorney for Plaintiffs

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Williams

## DEFENDANTS
Richards

**(b)** County of Residence of First Listed Plaintiff   Los Angeles
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Los Angeles
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Pines and Associates
Michael T. Pines
701 Palomar Rd. Ste. 300

Attorneys (If Known)

'11 CV 0749 DMS JMA

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
Plaintiff

☒ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                                      and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☒ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1  Original
Proceeding

☐ 2  Removed from
State Court

☐ 3  Remanded from
Appellate Court

☐ 4  Reinstated or
Reopened

☐ 5  Transferred from
another district
(specify)

☐ 6  Multidistrict
Litigation

☐ 7  Appeal to District
Judge from
Magistrate
Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):
15 USC 1692
Brief description of cause:
Fair Debt Collection Act

## VII. REQUESTED IN
COMPLAINT:
☒ CHECK IF THIS IS A **CLASS ACTION**
UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S)
IF ANY
(See instructions):

JUDGE

DOCKET NUMBER

DATE
April 11, 2011

SIGNATURE OF ATTORNEY OF RECORD
/s/ Michael T. Pines

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE